```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


------------------------------- x
EMILIO RODRIGUEZ                :
                                :
     v.                         :      Civil No. 3:13-cv-1584(AWT)
                                :
UNITED STATES OF AMERICA        :
                                :
------------------------------- x
```

**RULING ON MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Emilio Rodriguez, proceeding pro se, has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  For the reasons set forth below, his motion is being denied without a hearing.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On September 4, 2008, the petitioner was charged with a single count of conspiracy to possess with intent to distribute, and to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and five counts of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

The petitioner operated a narcotics-trafficking organization out of his West Hartford, Connecticut residence. He obtained crack cocaine, cocaine, and heroin from suppliers in New York and then distributed narcotics, often on credit, to a

1

customer base of approximately 15 to 20 individuals who, in turn, redistributed narcotics to others.

The Drug Enforcement Administration ("DEA") learned about the petitioner's narcotics-trafficking organization in December 2007 from a Confidential Source ("CS-1"). The DEA was able to confirm that CS-1 had received narcotics from the petitioner and a co-conspirator, Nancy Rivera ("Rivera"), who was also in a relationship with the petitioner. Some time after May 20, 2008, it commenced a wiretap investigation of two cell phones utilized by the petitioner and Rivera. By the time the DEA commenced the wiretap investigation, the petitioner had returned to the Dominican Republic for personal reasons.

During his absence, the petitioner maintained control over the narcotics-trafficking organization. When the petitioner left for the Dominican Republic in May 2008, he gave Rivera a customer list, the amounts each of his customers owed him, and the cell phone that his suppliers and customers would call.

A jury was selected on February 9, 2012. Then, on February 21, 2012, petitioner pled guilty to Count One of the Indictment, which charged him with conspiracy to possess with intent to distribute, and to distribute, 1 kilogram or more of heroin. In the plea agreement, the government agreed to recommend that the court reduce petitioner's Adjusted Offense Level under § 3E1.1(a). The plea agreement states that "[t]he defendant and

the Government agree that the drug quantities which form the basis of the offense to which he is pleading guilty and which includes the defendant's relevant and readily foreseeable conduct, U.S.S.G. § 1B1.3, app. note 1, is 1 kilogram of heroin and 2 kilograms of cocaine[.]"  Plea Agreement, at 3.  During the guilty plea proceeding, the petitioner represented that he had entered into the plea agreement freely and voluntarily, without threats, force, intimidation or coercion of any kind. He stated that he was completely satisfied with the representation and advice received from his attorney.

    The presentence report calculated the Base Offense Level for the petitioner's offense to be 32 under Guideline § 2D1.1(c)(4) based on the stipulation in the plea agreement that the drug quantities that formed the basis for the petitioner's offense were 1 kilogram of heroin and 2 kilograms of cocaine. There was a two-level enhancement under § 2D1.1(b) for possession of a firearm in connection with the offense.  There was an additional two-level enhancement pursuant to § 3B1.1(c) based on the petitioner managing and supervising Nancy Rivera. There was also a two-level reduction for acceptance of responsibility under § 3E1.1(a), resulting in a Total Offense Level of 34.

    At sentencing, the petitioner objected to (i) the enhancement pursuant to § 2D1.1(b) for possession of a firearm;

(ii) the finding that he did not qualify for the safety valve under Guideline § 5C1.2(a); and (iii) the increase for role pursuant to § 3B1.1(c). With respect to the enhancement under § 2D1.1(b), the court concluded that it was not necessary to make a finding with respect to the firearm because the court's finding with respect to role in the offense was dispositive on the question of whether the petitioner was eligible for the safety valve. The court found that the evidence established that the enhancement for role pursuant to § 3B1.1(c) was proper, and consequently, the petitioner was not eligible for the safety valve.

The court's finding that the government had proven that the enhancement for role in the offense was proper was based on Rivera's testimony and wiretap evidence. There were specific instances in which the wiretap evidence corroborated Rivera's testimony that she operated at the direction of the petitioner and was his helper. The court's finding was as follows:

> If I were going to base a finding solely on her testimony, I would have asked a few more questions. But her testimony is corroborated by the calls that were played today and are in the binder that was handed up. For instance, she has testified that she operated at the command of Mr. Rodriguez and she was his helper. When we look at Government's Exhibit 23, the telephone call from July 12, 2008, there's an exchange between her and Mr. Tisane where they're talking about proceeding and she says, "All right, wait. Wait for Negrito to call you. Negrito is going to call you now." And that corroborates her testimony as to how things worked.

4

> Also, the call on July 12, 2008, which is Government's Exhibit 24, it has the exchange between the defendant and Ms. Rivera where he is saying "When it comes, it's there, you let me know. There are -- for that you have to throw in four of them," which corroborates her testimony that he is telling her how to add a cutting agent. Then we go to Government's Exhibit 31, which follows and is paired with Government's Exhibit 30. That's the three-way call where Mr. Rodriguez comes on. That was on July 14, 2008. And he comes in and confirms that Ms. Rodriguez is going to still owe you something there. I don't know. Which I find also corroborates her version of events.
>
> Then the call that is really most telling here, which occurred on August 21, 2008, is between Ms. Rivera and Mr. Tisane. Ms. Rivera is saying she hasn't been able to get a hold of that guy and Mr. Tisane is saying, "I told him. Well, what's up with him?" And Ms. Rivera says, "Now I haven't been able to get a hold of him, and until I do, there's nothing I can do because he's the boss." I think that pretty definitively establishes his role.

2/25/17 Sentencing Tr. 3:08-cr-186 (AWT) (Doc. No. 299) at page 57, line 18 to page 59, line 4.

The petitioner was sentenced to 120 months of imprisonment, followed by a five-year term of supervised release, and ordered to pay a $100 special assessment. The petitioner appealed. On appeal, the petitioner contested the "district court's finding that he was a supervisor or manager of the drug enterprise, and therefore was ineligible for safety valve relief from the applicable mandatory minimum." United States v. Rodriguez, 12-2688-cr at *2 (2d Cir. June 3, 2013), Doc. No. 74. The Second Circuit dismissed the petitioner's arguments, concluding that the "district court had an ample factual basis on which to conclude by a preponderance of evidence that Rodriguez was an

5

organizer, leader, supervisor or manager of a narcotics conspiracy, thereby precluding his eligibility for the safety valve under 18 U.S.C. § 3553(f)." Id. at *3.

### II. LEGAL STANDARD

A "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495 (1962). In making its determination regarding the necessity for a hearing, a district court may draw upon its personal knowledge and recollection of the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1997); United States v. Aiello, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 petition, or any part of it, may be dismissed without a hearing if, after a review of the

6

record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

### III. DISCUSSION

The petitioner claims that he received ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, the petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.' " Id. at 560

(quoting Strickland, 466 U.S. at 696-97) (internal citations omitted)).

The petitioner claims that his attorney gave him ineffective assistance by (1) failing to object to the two-level enhancement under Guideline § 3B1.1(c) for role in the offense; (2) failing to discredit Nancy Rivera's testimony as to his role; (3) failing to object when the court relied on the stipulation in the plea agreement as to the drug quantity; and (4) failing to object to a number of other claimed errors.  The petitioner's claims are without merit.

### A. The Enhancement under Guideline § 3B1.1(c)

The petitioner argues that his counsel gave him ineffective assistance by failing to object to the two-level enhancement for role in the offense under Guidelines § 3B1.1(c).  That is not correct.  This enhancement was objected to and was a subject of the Fatico hearing.  The petitioner then pursued this issue on appeal, but was unsuccessful.  "[S]ection 2255 may not be employed to relitigate questions which were raised and considered on direct appeal." United States v. Becker, 502 F.3d 122, 127 (2d Cir.2007).  Thus, the petitioner's arguments contesting the two-level increase under Guideline § 3B1.1(c) may not be raised here.

### *B. Rivera's Testimony*

The petitioner contends that his counsel's performance in discrediting Rivera's testimony was below an objective standard of reasonableness. This contention is without merit.

Counsel elicited testimony from Rivera that she had continued to run the drug business in the petitioner's absence, which was intended to support the petitioner's argument that, far from him being a leader, she was Rivera's partner in their conspiracy. Counsel also brought out Rivera's motivation to testify favorably for the government because of her cooperation agreement. Counsel even managed to establish that Rivera had memory issues. The petitioner points to his counsel's failure to obtain Rivera's psychiatric record, which the petitioner argues "speaks volume[s] . . . in regards to her testimony." Petitioner's Reply (Doc. No. 10) at 2 ("Pet'r's Reply"). Assuming arguendo that Rivera's psychiatric record would have provided additional material for impeachment, the fact that such cumulative impeachment material was not obtained is no basis to set aside the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. There would have been no concern as to Rivera's competence, the court having previously taken Rivera's guilty plea.

The petitioner also contends that his counsel failed to inform "the Court of the spousal relationship between petitioner and Nancy Rivera . . . which impaired their Constitutional [sic] protected privity [sic] rights in the spousal relationship". Pet'r's Reply at 3. He appears to argue that his counsel should have invoked the martial communications privilege, which "prevent[s] the revelation of [private marital] communications." United States v. Premises Known as 281 Syosset Woodbury Rd., Woodbury, N.Y., 71 F.3d 1067, 1070 (2d Cir. 1995). This argument fails for two reasons. First, "this privilege can be successfully asserted only when there exists a marriage valid at the time the communication is made." In re Witness Before Grand Jury, 791 F.2d 234, 237 (2d Cir. 1986). The petitioner and Rivera were never married. Second, even if they had been married, the "partnership in crime" exception to this privilege "permit[s] the spouse of an accused to testify willingly concerning their joint criminal activities[.]" United States v. Estes, 793 F.2d 465, 468 (2d Cir. 1986). Thus, the petitioner was not prejudiced by his counsel's failure to object to Rivera's testimony on the grounds of the marital communications privilege.

## C. The Stipulation as to Drug Quantity

In sentencing the petitioner, the court relied on a drug quantity of at least one kilogram of heroin and two kilograms of

10

cocaine.  The petitioner stipulated to this quantity in his plea agreement, and was canvassed about it during the guilty plea proceeding.  As a result, petitioner's trial counsel acted reasonably in not objecting to the drug quantity.  See Brown v. United States, No. CIV. 3:07CV709AWT, 2008 WL 762119, at *1 (D. Conn. Mar. 20, 2008) (rejecting "defendant's first contention . . . that he received ineffective assistance of counsel because his attorney failed to object to the drug quantity . . . [because] the defendant himself agreed to the drug quantity during the change of plea proceeding").

Additionally, the petitioner was not prejudiced in any way because his counsel refused to object to the drug quantity at sentencing.  Here, "there is [no] reasonable probability that, but for counsel's [purportedly] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688.  If the petitioner's counsel had argued that the court could only sentence the petitioner based on the amount of narcotics for which petitioner was personally responsible, the outcome would not have been different.  Under Guideline § 1B1.3(a)(1)(B), a defendant involved in a jointly undertaken criminal activity may be sentenced based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity", and the court found that a role enhancement was proper.

### *D. The Petitioner's Additional Arguments*

The petitioner makes a number of arguments concerning his sentencing that are either simply inaccurate or have no bearing on the issue of ineffective assistance of counsel.  First, the petitioner argues that the court erred by failing to give him the one-level reduction under Guidelines § 3E1.1(b).  Guideline § 3E1.1(b) allows for a one-level reduction in the offense level if the defendant demonstrated acceptance of responsibility for his offense <u>and</u> if the defendant assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty.  Here, the petitioner failed to meet the latter requirement; he pled guilty after jury selection.

Second, the petitioner argues that his counsel failed "to object to the Probation Department (PSR) improperly applying a weapon enhancement which increase[d] [petitioner's] sentencing level[.]"  Pet'r's Br. (Doc. No. 10) at 10.  This is untrue because counsel did in fact object to this enhancement, and it was a subject of the <u>Fatico</u> hearing.  Moreover, ultimately the court did not apply this enhancement in determining the petitioner's Total Offense Level.

Third, the petitioner contends that his counsel rendered ineffective assistance by failing to object to the court's decision to impose a period of supervised release.  The

petitioner makes this argument based on Guideline § 5D1.1(c), which states that a court "ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." Here, as reflected in the plea agreement, the statute provided for a five-year mandatory minimum term of supervised release.

Finally, the petitioner argues that the disparity between Rivera's sentence and his sentence violates federal law requiring courts to consider, inter alia, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This factor was considered by the court at sentencing, and based on all the factors in § 3553, very different sentences were appropriate.

**IV. CONCLUSION**

For the reasons set forth above, the Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is hereby DENIED. The court will not issue a certificate of appealability because the petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

The Clerk shall close this case.

It is so ordered.

Signed this 29th day of March 2017, at Hartford, Connecticut.

>                         /s/AWT
>                     Alvin W. Thompson
>                 United States District Judge